■ In the Matter of LONG ISLAND RAILROAD COMPANY, Petitioner, v THOMAS J. MADISON, as Commissioner of Transportation, et al., Respondents. (Proceeding No. 1.) In the Matter of MICHAEL RICHTER et al., Petitioners, v NEW YORK STATE DEPARTMENT OF TRANSPORTATION et al., Respondents. (Proceeding No. 2.) [843 NYS2d 856]—

Kane, J. Proceedings pursuant to CPLR article 78 (transferred to this Court by orders of the Supreme Court, entered in Albany County) to review a determination of respondent Department of Transportation that, among other things, continued a private at grade rail crossing for a period of 10 years.

Long Island Railroad Company (hereinafter LIRR) decided to close a private at grade rail crossing in Suffolk County due to safety concerns. The crossing represents the intersection of the railroad tracks with a private dirt roadway which provides the only means of access to four parcels of property. That property includes a residential parcel owned by petitioners Michael Richter and Dianne Richter, a full-time residence owned by respondent John A. Forrest, a parcel containing a communications tower owned by respondent CSC Acquisition Corporation and an undeveloped parcel owned by respondent Lar-Sal Realty Corporation. Forrest and CSC sought a determination by respondent Department of Transportation (hereinafter DOT), pursuant to Railroad Law § 97-a, as to whether the crossing should be closed.

After a hearing, an Administrative Law Judge (hereinafter ALJ) made recommendations, including that the crossing serves a public purpose justifying its continued existence, active warning devices were needed to address safety concerns, LIRR should work with affected property owners to reach an agreement apportioning costs for installation and maintenance of warning devices and the general public should be prohibited from using the crossing until safety devices are installed. DOT issued a determination adopting the ALJ's recommendations, but further ordered that LIRR install an active warning system within three years, use of the crossing by the general public would be prohibited, the crossing would continue for 10 years at which time it would be closed, and the parties must delineate the apportionment of rights, responsibilities and costs by private agreement, with DOT involvement only upon the parties' inability to reach an agreement. LIRR and the Richters commenced separate CPLR article 78 proceedings challenging different portions of DOT's determination. Supreme Court transferred the proceedings to this Court (see CPLR 7804 [g]), and we consolidated them.

Substantial evidence supports DOT's determination to continue the private crossing. DOT has the authority to order alterations in existing private rail crossings to insure the public safety (see Railroad Law § 97-a [3] [a]). If agreement on alterations cannot be reached, respondent Commissioner of Transportation is required to hold a hearing "on the need for such alterations and whether any other alternatives are available, including the use of an alternate route or the closure of the private rail crossing" (Railroad Law § 97-a [3] [a]). The Commissioner's determination after such a hearing will be upheld if the record contains substantial evidence supporting the

determination (*see* CPLR 7803 [4]; *Matter of Lahey v Kelly*, 71 NY2d 135, 140 [1987]; *Matter of Long Is.-Airports Limousine Serv. Corp. v State of N.Y. Dept. of Transp.*, 170 AD2d 747, 749 [1991], *appeal dismissed* 77 NY2d 988 [1991], *lv denied* 78 NY2d 854 [1991]).

Evidence introduced at the hearing supports DOT's determination that the public safety would be insured by allowing continued use of this private crossing, with the addition of safety devices and a prohibition against use by the general public. Two residential parcels and two commercial parcels would be landlocked if the crossing was closed, since no other means of ingress and egress exist to reach any of these properties. As a result, emergency vehicles would be unable to reach these properties. CSC's communications tower contains equipment for not only CSC's cable television, Internet and phone services, but equipment for its lessees, including cellular phone and pager services and a radio station. Due to the unique characteristics and location of this tower, at least three towers would be necessary to replace this one to provide adequate coverage to the area. Emergency 911 service is provided from this tower and could be lost if the crossing was closed. Finally, the evidence demonstrated that no accidents have ever occurred at this private crossing, which has apparently existed since 1869.

The portion of DOT's determination requiring closure of the crossing in 10 years is not supported by substantial evidence. This conclusion was apparently based on the assumption that alternative access to the properties could be arranged either by connecting to roadways near existing crossings or building a grade separation at the location of this at grade crossing. The only evidence concerning the possibility of connecting to an existing crossing in the vicinity was testimony that an earlier plan for a nearby subdivision, which is reached by traversing a bridge over the railroad tracks, had included an access road which could connect to the private dirt roadway containing the parcels at issue here. That access road was never constructed, and there was no proof that the subdivision developers have any intention of building it. No proof concerning a grade separation was submitted during the hearing. Absent substantial evidence that connection to an existing crossing or creation of a grade separation was feasible, that portion of the determination must be annulled.

Finally, any challenge to the portion of DOT's determination ordering allocation of the costs and responsibilities of alterations is premature, considering that DOT merely required the parties to enter an agreement on this topic and apportionment would

only be determined by DOT upon an inability of the parties to reach an agreement (*see Matter of Long Is. R.R. Co. v Madison,* 36 AD3d 1106, 1108 [2007]).

Crew III, J.P., Peters, Spain and Lahtinen, JJ., concur. Adjudged that the determination is modified, without costs, by annulling so much thereof as ordered closure of the private at grade rail crossing within 10 years; matter remitted to respondent Department of Transportation for further proceedings not inconsistent with this Court's decision; and, as so modified, confirmed.